There's an underlying issue in this matter, the issue that the district court decided, which is whether or not there's reasonable suspicion to support this search of Mr. Lofton, who is on supervised release at the time of the search, a residential search. But before this Court gets to that question, there's an ancillary legal question that has to be answered, which is, is reasonable suspicion required at all? The government proffers two bases for this Court to determine that no reasonable suspicion is required at all. The first is subsequent authority that was subsequent to the magistrate and district court's decision in this matter, which is the Supreme Court case of Sampson v. California. The other issue, which wasn't really decided at the lower court level, which the government tenders on appeal, is whether or not this search can be supported under the special needs exception to the Fourth Amendment. I'll address the special needs exception first. The special needs exception was sanctioned in the arena of probationary searches by the Supreme Court in Griffin v. Wisconsin, a slightly older case. Now, a key facet of Griffin is that the search was conducted pursuant to a statutory and regimented regime. It was a probationary search that was carefully circumcised and laid out by statutes and probationary regulations. The other facet that's important to look at when we look at special needs exceptions to the Fourth Amendment is whether or not the purpose of the search is sufficiently divorced from law enforcement purposes. And, indeed, since Griffin has come out, and some pundits say that the holding at Griffin is somewhat suspect given authority since Griffin by the Supreme Court has a requirement that the special needs has to be even more divorced from law enforcement purposes than what the court articulated in Griffin. Counsel, how do you deal with Sampson v. California? That involved a parolee. And the court said it wasn't even necessary to have reasonable suspicion there because there was really no privacy expectation in light of the fact he's a parolee, which is your client's situation, is it not? Well, and Sampson, interestingly enough, Sampson talks about how they don't even need to get into the special needs analysis because they're going to analyze the situation under a pure Fourth Amendment analysis. Sampson deals with a parolee, and this is particularly important, a parolee who was subject to a search that he, a search condition that he agreed to that explicitly stated that the search can be conducted at any time without any finding of suspicion. And your client did not do that? The search condition in this case can be found on ER 29. It states that the defendant shall submit to the search of his person, property, residence, or automobile without a search warrant to ensure compliance with the conditions of release. It does not explicitly state. Is it your contention that they required a probable cause, just they just didn't have to go and satisfy the warrant requirement? No, Your Honor. That would be an untenable argument. Given the Supreme Court's decision at nights and this Court's precedence, the irreducible minimum requirement, it seems to be reasonable suspicion. This search condition in this case does not explicitly say suspicionless. And interestingly enough – Counsel, your client was in supervised release status. In the hierarchy of probation and parole and supervised release, where does supervised release fall? It's a fascinating question, Your Honor, because this Court has precedence that seems to say that they are the functional equivalent, that there is no measurable difference regarding the reduced expectation of privacy between a parolee, a supervised releasee, or probationer. However, in Samson, the Court talks about – Judge Thomas, in his majority opinion, talks about how Samson explicitly agreed to these conditions in order to be released from prison on parole. In other words, you can stay in prison or you can be released on parole if you agree to these conditions. That is not the situation in the supervised release context. Supervised release is foisted upon an individual after they fully discharge their prison sentence. So it lacks that somewhat quasi-consensual aspect. Now, I was under the impression that supervised release was even more restrictive than probation. But this was – Probation on parole. And part of this – this was in Lewa. Your client was talking about how he preferred to go back to jail rather than have to put up with the conditions that were being put on him. They seemed to have the option of going back to jail rather than standing there. So it sounds like they were allowing him to serve his prison sentence, but just to serve it at home with certain restrictions. And if so, then that sounds like that that is – that that is even one step more removed, one step more restrictive than even the situation in Samson. I understand what the Court is saying. The – it comes – the government tenders an argument similar to this in their answering brief, which seems to be that this expectation of privacy is further diminished by all these factors until you get to this point where you're below reasonable suspicion, almost as though the government is arguing for this standard of requirement that the government proffer evidence somewhere between reasonable suspicion and zero. My – my counter to that is reasonable suspicion is the irreducible minimum. Now, Loftin did have an interview with the probation officer where he said, well, perhaps I prefer to go back to prison. But then later on he relented and agreed in January of 2005 to have a modification in court. The court ordered a modification that he serve on home confinement. Counsel, let's oppose – let's oppose that – that we agree with you that reasonable suspicion is the standard. Why – why didn't he – why didn't the officers have reasonable suspicion here? Your client – your client had – the GPS indicated that he had – that he had violated the terms. They had some – some evidence that – that he possessed a weapon. He had been attending funerals of gang members, which he was expressly forbidden from doing. Why doesn't that add up to reasonable suspicion of illegal activity? It's a fascinating question because the – to break that down, it becomes – the real inquiry becomes reasonable suspicion of what? What – what reasonable suspicion does the officer of probation or the government have to tender to support the residential search? Is it reasonable suspicion that conditions of supervised release have been violated in the past? It is clear in this record, and the client admitted in January of 2005, that he did attend a funeral of his cousin where gang members were present, that he had missed a number of drug tests, that he had committed a number of violations. Additionally, he was – well, he was put on home confinement, and then he violated the conditions of his home confinement by wandering outside of the – the area that he was supposed to – to – to limit his movement. Isn't that a basis for reasonable – reasonable suspicion, though, counsel? Well, there's a certain – reasonable suspicion in what – of what? That he previously violated his release? Reasonable suspicion that he may be engaged in a violation of his release arrangement and that he may be possibly involved in new criminal activity. Right. But it's atmospherics here that he has violated the conditions of his probation. But that's really the issue, isn't it? Right. It is. What – I mean, for example, the idea that there was a statement that he may have pointed a gun at somebody. There is a – the alleged gang membership, the fact that he went to the funeral where there were other gang members, it was, as Judge Bybee mentioned, expressly prohibited. I'm troubled – I'm not troubled. I am puzzled as to why you say reasonable suspicion of what? I mean, these are – this is the bread and butter of reasonable suspicion. They're concerned whether your client is violating the terms of his supervised release. And these are indicia that he is doing so. That's reasonable suspicion, is it not? Right. But that had already – Your Honor, it's a great point. But he – it had already been determined by the officer of probation that he had violated the conditions of his probation. On March 22, 2005, he came in. So what's the problem? He was told that they were going to take him to court for violation. So I guess – But what do we do with the gun? How do you get around the gun? I mean, this is – I understand that you might say, well, if he goes to the funeral, so what? You know, that's no big deal he's associating, but you don't go rummaging through somebody's house just because they attended a funeral, even if it was the funeral of a gang member. But what do you do about the gun? There's a lot of problems attendant to the use of the gun as a fact and a reasonable suspicion analysis. It was based on a tip that was given to another person that was given to the officer of probation. Yeah, but if you're arguing probable cause, that's different. But the district court, the magistrate court did not allow us to delve into the veracity, the point of – How much do we have to have to satisfy reasonable suspicion? The guy's affiliating with gang members. He's wondering. He's telling him that he's violating the terms. He's told him he probably ought to go back to prison. And now they've got somebody who says they've seen him with a gun and he was pointing it at somebody. How much more do we have to have to say, you know something, there's a pretty good chance this guy's doing some really bad stuff, including he's got a gun someplace? Is that correct? I mean, there is a lot afoot there. You're correct in that analysis. However, what I like to focus the inquiry on is did they have reasonable suspicion that they would find criminal proceeds or contraband or something of that ilk during a residential search, that the reasonable suspicion has to be tailored to the purpose of the search, which in this case was a residential search. I would add, following up on Judge Bybee's question, the very fact that he was allegedly seen with a gun pointing it at someone, doesn't that in and of itself give reasonable suspicion, if you follow your line of argument, that they're going to possibly find a firearm? It cannot in this case because our ability to cross-examine and to go into an inquiry about the basis of this tip, how the tip was formulated, what was the basis for belief that he had a gun, was circumscribed by the magistrate court because the magistrate court did not want to protect the identity of this informant. And the findings of the recommendation. Counsel, this is why it was critical when I asked you earlier whether you were going to argue that the government had to have probable cause. Because if this were a probable cause inquiry, you would probably have really good reason to say, wait a minute, we get to examine the government's basis for this. But we're at a lesser standard. It's not clear that we even have to have reasonable suspicion. But if we do, it's pretty hard to say why we haven't satisfied it here. And it has to be on something beyond this tip of the gun. In the findings of the recommendation, the magistrate court specifically said that this tip I find not to be reliable and it's not enough for reasonable suspicion. So it was this unreliable tip plus the additional factors addressed by this court. And my argument is that those additional factors occur to antecedent events that have no probative weight toward establishing that there would have been any contraband in Loftus House. And I see I'm way over time. Thank you for listening to my argument. Mr. Carr. Ms. Brown. May it please the Court. Good morning, Your Honors. Christina Brown from the District of Nevada for the government. Your Honors, it's the government's position that the court below correctly held that the defendant's Fourth Amendment rights were not violated by the search that produced the weapon resulting in the charge at hand. The denial of the defendant's motion to suppress should be upheld for three reasons, but the court has already focused in on the main one. I think the court need not even reach the Sampson issue because the court below correctly found that there was reasonable suspicion to believe that the defendant had violated the terms of his supervised release at the time they elected to carry out the search. At the time the probation officers decided to carry out the search of the defendant's home, they had information that he had violated probation or supervised release by virtue of the GPS tracking device, showing that over two consecutive days, he was nowhere near where he had told the probation officer that he would be. When they spoke with him about it, he lied about his whereabouts. He was told that they were going to be going back to court. Judge George had told the defendant if there were any further infractions, he was going back to prison for 36 months. This information was known to them at the time that they then got the additional tip regarding the defendant brandishing a weapon at an individual during a day that they were unable to verify where he had been. So when that condition arose, it was incumbent on the probation officer, as part of his duties, to go perform the search that they performed. So the court correctly found that he had violated the terms of his supervised release. And I think what the defendant is doing here is trying to elevate the suspicion that's required to a probable cause standard, as Judge Boddy has pointed out. And that's not the standard that the court is to take into consideration when evaluating the propriety of a search, such as what you've presented. Mr. Brown, does the record indicate any prior search of the defendant's home? In other words, what I'm looking for is whether there was some kind of an even lesser privacy expectation because, in fact, this kind of a search had occurred previously. Is there anything in the record to that effect? There's nothing in the record relating to a prior search of the defendant's home. But what I think is critical here in terms of the expectation of privacy that the defendant had was the fact that he had violated supervised release so many times before and had admitted, it's recounted in the brief there, but some ten different violations over the course of his supervised release. He admitted all of these violations. He had been told again by the court, any further infraction is going to result in your going back to prison for 36 months. He was placed on home confinement at his own request in electronic monitoring. Therefore, we make the point that his privacy expectation was closely akin to what a prisoner's would be. I don't think the court has to make that finding that he had absolutely no expectation of privacy, but his expectation of privacy had to have been exceptionally low under those circumstances, and particularly where the probation officer had informed him, we are going to go back to court with the knowledge that Judge George had said you can expect to be going back to prison for 36 months. At any moment, Mr. Loftin could have expected the probation officers to be knocking on his door to take him back to court. And once the terms of supervised release were violated and Mr. Loftin knew the probation officers had regarded him as having violated supervised release, he was subject to a full probation search at that time. They didn't have to have any kind of suspicion they were going to find contraband. Again, I think that the defendant is confusing the standards and the analysis in various opinions as to whether there was a law enforcement purpose behind the search, and that's where some of the cases talk about having to have reasonable suspicion to believe that criminal activity has taken place. That's not what we have here necessarily, although many times necessarily if supervised release or if a crime has been committed, such as they have reasonable suspicion to believe there's a gun, that also is a violation of supervised release. But that's not the situation that we have here in any event. They didn't go there. It wasn't police officers independent of probation officers going to try to find evidence. They were simply conducting a search pursuant to the agreement the defendant had signed that he knew he was subject to warrantless search to ensure compliance with the terms of supervised release. So in terms, again, of his expectation of privacy, he was given express notice that he was subject to the search condition to ensure that he was complying with the terms that were required by the court. So unless there are any other questions. Thank you. I'm already over time. I know you didn't, Mr. Carr. We always want to give you full opportunity. So if there's anything that the Court absolutely needs to know from you, we would be happy to give you some additional time. The only further point I would make is that the Office of Probation, in the record it establishes, this search occurred on March 24th, 2005.   It's not the date. It's not the date. It's not the date. It's not the date.     The position, as I understand, was that on March 22nd, they affirmatively were seeking a petition to revoke his term of supervised release. So the search condition clause here says to ensure compliance with the conditions of supervised release, they already did that. They already decided that they were going to revoke it.  Okay. Thank you, Mr. Carr. Thank you, Ms. Brown. I appreciate the arguments of counsel. The last case on the calendar for the day
judges: Goodwin, Bybee, M. Smith